## R. W. MONTGOMERY *v.* SHIP ABBY PRATT and Owners.

A vessel is not liable for damage caused to goods from the "*sweating of the hold,*" when the vessel has been supplied with proper ventilators. But if the injury results from improper stowage, the vessel will be held liable.

When goods receipted for in good order are found in a damaged condition at the end of the voyage, the vessel is presumed to be liable until the injury is shown to have been caused by the act of God, inevitable accident, or public enemies.

APPEAL from the Third District Court of New Orleans, *Kennedy*, J.   *P. E. Bonford*, for plaintiff.   *E. A. Bradford*, for defendants.   The judgment of the court was pronounced by

ROST, J.   The plaintiff claims from the defendants $302, being the amount of the alleged damage to 158 boxes tin incurred during a voyage from Liverpool to New Orleans.

The bill of lading states the contents of the boxes, two hundred in number, to be tin plates; and in it the goods are acknowledged as shipped in good order and condition.   Upon their receipt in New Orleans, some of the boxes were found to be in bad order.   They were examined, at the request of plaintiff, by two persons, one of whom was an inspector for a portion of the New Orleans insurance companies, and the other was a dealer in hardware.   They gave a certificate of the result of their inspection, in which they say, "they find the same rusted and damp, apparently from the sweat and dampness of the ship's hold."   Upon their examination at the trial, they attributed the injury to the same cause; stating also that the boxes were mouldy and the nails rusty.   It further appears from the evidence, that this sweating of the hold occurs more or less in all vessels, and increases on passing from a cold to a warm climate.   It may be partially relieved by ventilation.   The Abby Pratt was supplied with ventilators in the most approved form.   Goods stowed low are more likely to escape injury from this sweating of the hold, than those stored near the deck. Tin plates are an article susceptible of damage from this cause.

The district judge gave plaintiff a judgment for the amount claimed, and the defendants have appealed.

The general doctrine as to the liability of the master and shipowner is well MONTGOMERY
settled. The cargo must be taken on board with care and skill, and be properly    *v.*
stowed. All possible care must be taken of it by the master during the voyage;   SHIP
and he is responsible for any injury which might have been prevented by human    ABBY PRATT.
foresight and prudence, and competent naval skill, he being chargeable with the
most exact diligence. When goods receipted for in good order are found to be
damaged at the end of the voyage, the burden of proof is on the captain and
shipowner to show that the loss was occasioned by the act of God (inevitable
accident, as some express it) or public enemies.

The general doctrine is not disputed by the defendants; but they contend, that
the sweating of the ship's hold is a peril to which all goods transported in ships
are exposed, and which must be included among the perils of the sea. It can-
not, say they, be entirely guarded against; and the testimony shows that every
usual and proper means of ventilation were adopted on board the vessel. They
also rely upon the testimony of the mate, that the cargo was well stowed.

A difficulty which interposes itself to our reversing the judgment, on the
grounds suggested, is this : It is in evidence, that goods which are stowed near
the deck are more exposed to the effects of the sweating of the hold, than those
which are stowed low. And as the goods in question were, from their nature,
particularly susceptible of injury from that cause, it would be imprudent stow-
age to put them near the deck. Now, as a part of this lot of tin plates, which
was receipted for in good order, arrived in a damaged condition, and another lot
of tin plates, brought by the same vessel on the same voyage to another con-
signee, arrived uninjured, the only reasonable mode, under the evidence, of
accounting for the damage to a portion of the plaintiff's lot, is by supposing it to
have been stowed in a position where it was more exposed to the deleterious
influence. But if it was so stowed, it was a fault on the part of the carrier,
who was informed what the boxes contained; and he must bear the resulting
loss. This was the view of the evidence taken by the district judge. He
observes: "I infer from the testimony, that tin and other goods liable to be injured
by dampness or water, will almost to a certainty be injured, if they constitute the
top part of the cargo. There was nothing between the tin on board the Abby Pratt
and her deck. The upper tier of this tin was, therefore, exposed to probable
if not certain injury."

Judgment affirmed, with costs.